IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GREGORY D. BARRION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:18-cv-00281-MTT-CHW |
| | : | |
| GREGORY MCLAUGHLIN, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court are two motions for summary judgment, filed by Plaintiff Gregory D. Barrion (Docs. 59, 67), and Defendants McLaughlin, Eaddie, Thomas, Pope, Williams, Holt, Collins, and Perry (Doc. 69), respectively. For the reasons discussed herein, it is **RECOMMENDED** that Plaintiff's motion (Docs. 59, 67) be **DENIED**, and that Defendants' motion (Doc. 69) be **GRANTED in part** and **DENIED in part**.

Plaintiff's motion to compel discovery (Doc. 66) is **DENIED** as untimely, since the motion was filed after the close of discovery, *see El-Saba v. Univ. of S. Alabama*, 738 F. App'x 640, 645 (11th Cir. 2018). Plaintiff's motion for default judgment (Doc. 68) is **DENIED** as meritless, as all defendants in this action have timely filed their respective answers and defenses.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff Gregory D. Barrion, a prisoner proceeding *pro se*, filed this complaint[1] pursuant to 42 U.S.C. § 1983, raising claims under the Eighth Amendment regarding various incidents

---

[1] In response to this Court's orders (Docs. 4, 9), Plaintiff filed two recast complaints (Docs. 10, 13). Prior to recasting his complaint, Plaintiff was notified that his recast complaints will "take the place of and

involving "cross-cuffing" while traveling to and from Macon State Prison, his former place of incarceration. (Docs. 10, 13, 20, 23). Plaintiff is now confined at Georgia State Prison. (Doc. 41).

The cross-cuffing procedure involves cuffing an inmate's right wrist to his left wrist which is in turn attached to a waist chain, causing the inmate's arms to cross his stomach, severely limiting movement. (Doc. 10-1, pp. 19, 21; 69-3, pp. 44–46). In Plaintiff's case, his ankles were also cuffed and shackled to each other with a connecting chain, or "leg irons," allowing for only limited ability to walk. (Doc. 10, p. 5; 69-3, 44–46).

The facts as alleged by Plaintiff in his recast complaints are as follows. On November 6, 2017, Plaintiff was transported to Augusta State Medical Prison ("ASMP") from Macon State Prison while "cross-cuffed." (Doc. 10, p. 5). Plaintiff was taken to ASMP for treatment of an unrelated sinus issue. (Doc. 69-3, p. 41). Shortly before he was transported to ASMP, Plaintiff inquired as to why he and the other inmates in the vehicle were being cross-cuffed. Deputy Warden Eaddie responded by directing Plaintiff's attention to a sign posted on a nearby wall that stated:

Per Mr. Eaddie
Inmates going out
Will be cross cuff[ed]
NO EXCEPTIONS!!!!!!!!

(Doc. 10, pp. 5, 7). Defendants do not dispute that a sign approximating the above message was posted at the prison. (Eaddie Interrog., Doc. 59-1, p. 4; Thomas Interrog., Doc. 59-1, p. 6). According to Plaintiff, Eaddie was present at the transport to ensure all inmates complied with the notice. Plaintiff and the other inmates then made the four-hour journey to ASMP "in anguish" because of the cross-cuffing. (Doc. 10, p. 5).

---

supersede all allegations made in the original complaint." (Doc. 4, p. 2). Therefore, "the Court will only consider the factual allegations and claims contained in Plaintiff's recast complaint[s]." (*Id.*).

Once at ASMP, Plaintiff attempted to alight from the transport van but lost his balance. Plaintiff tried to grab a seat to balance himself as he stepped down from the van, but his "arm reach was so restricted" that he "missed the seat," causing him to "miss [his] step in the leg irons." As Plaintiff was falling out of the van "head [first]," he tried to "turn in the air" so that he would fall on his back instead. While attempting this maneuver, the back of his head repeatedly struck against the van door. Plaintiff's fall cushioned by Sergeant Jones, who caught Plaintiff's head before it struck the pavement but was unable to prevent Plaintiff's back from "slamm[ing] against the ground." As Plaintiff hit the ground, he heard Officer Knight, an official at ASMP, say, "Why do they keep falling right here?" (*Id.*, pp. 5–6). Although Plaintiff claims that the position in which Jones caught his head ultimately caused injury to his neck, Plaintiff has chosen not to name Jones, who has since retired, as a defendant in this case to show his gratitude to Jones for his actions. (*Id.*, p. 6; Doc. 13-1, p. 1).

Plaintiff was then taken to the emergency department at ASMP, where he was provided with pain medication. Plaintiff claims that when he boarded the van to return to Macon State Prison, Jones told him that another inmate had fallen "face-first and cut his face on the iron step" during an incident similar to the one Plaintiff had experienced. (Doc. 10, p. 6).

On the journey back to Macon State Prison, Plaintiff was again cross-cuffed. This time, the cross-cuffing caused him "torment" because of the neck pain resulting from his earlier fall. Another inmate on board the van asked Officer Thomas, "Why are you still cuffing him like that? He's hurt." Thomas replied, "We have to, per D.W. Eaddie." During the ride back to Macon State Prison, Plaintiff's neck pain was "murdering [his] mind to death," and he later experienced "one of the greatest moments of relief [he] ha[s] ever felt" once he was eventually released from the restraints. (Doc. 13-1, p. 4). Plaintiff's neck "hasn't been the same since," and

he continues to suffer daily neck pain. Plaintiff claims that he "will stand to be tested by any doctor." (Doc. 10, p. 6).

Since the November 2017 incident, Sergeant Pope, Officer Williams, and Officer Holt have cross-cuffed Plaintiff on at least two occasions for a total of eight hours of "extreme discomfort and agony." On one occasion, on or around October 15, 2018, during a visit to the hospital to have an MRI scan performed on his neck, Plaintiff was cross-cuffed by Officer Collins, on Holt's order, even though it was "unnecessary" to do so because Plaintiff was traveling alone. Plaintiff claims that Holt gave him the option of traveling to the hospital cross-cuffed or not going to the hospital at all. (Doc. 20). On another occasion, Plaintiff was cross-cuffed during a journey that was prolonged for approximately an hour because Williams and Pope stopped to be fitted for bulletproof vests. (Docs. 20, p. 1; 69-5, ¶ 14).

B.  Claims and Relief Requested

Based on the aforementioned allegations, Plaintiff's Eighth Amendment claims against Defendants McLaughlin, Eaddie, Thomas, Pope, Williams, Holt, Collins, and Perry were allowed to proceed for further factual development. (Doc. 29). Specifically, it was found that Plaintiff had alleged sufficient facts to state conditions of confinement and excessive force claims against McLaughlin, Eaddie, Thomas, Pope, Williams, Holt, and Collins; and a deliberate indifference to serious medical needs claim against Thomas. Defendant Perry, the current warden of Macon State Prison, was automatically substituted for McLaughlin, the former warden, in his official capacity only, pursuant to Federal Rule of Civil Procedure 25(d). (*Id.*, pp. 4–5).

In relief, Plaintiff requests compensatory and punitive damages, as well as an injunction to "abolish the policy and practi[c]e of cross cuffing" at Macon State Prison. (Docs. 10-1, p. 17; 59, p. 6). Because Plaintiff has since been transferred from Macon State Prison, and he does not

allege that cross-cuffing has continued at his new place of incarceration,[2] his claims for injunctive relief are moot. *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (citing *McKinnon v. Talladega Cty.*, 745 F.2d 1360, 1363 (11th Cir. 1984), and *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986)); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988). Therefore, only his claims for compensatory and punitive damages remain.

    C.  Procedural Background

The parties have filed cross motions for summary judgment. Plaintiff has moved for partial summary judgment against Defendants McLaughlin, Eaddie, Thomas, and Holt only. Defendants have moved for summary judgment based on qualified immunity, Eleventh Amendment immunity, and exhaustion. Defendants filed a timely response to Plaintiff's motion, but Plaintiff has not responded to Defendants' motion. On October 16, 2019, Plaintiff filed a letter informing the Court that he had given his lengthy, handwritten response to another inmate, Carlos Smith-Jones, who then lost it. (Doc. 75). Almost two months have passed since Plaintiff filed his letter, and four since Defendants filed their summary judgment motion, yet no response has been filed.

## II.    EXHAUSTION

Defendants Collins, Holt, Williams, and Pope argue that the claims against them should be dismissed for failure to exhaust. "[E]xhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008). Therefore, an exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (quotation omitted). Viewed in light of the

---

[2] In his complaint, Plaintiff claimed that Macon State Prison is the only prison in Georgia that cross-cuffs its inmates during transport. (Doc. 10-1, p. 24).

appropriate standards, Plaintiff failed to exhaust his administrative remedies as to the claims against Defendants Collins, Holt, Williams, and Pope before filing the instant complaint; therefore, those claims should be dismissed.

The Prison Litigation Reform Act, provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "As a result, when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Therefore, even if the prisoner exhausted his administrative remedies after filing his complaint, the claims not exhausted prior to commencement of the action must be dismissed. *See Smith v. Terry*, 491 F. App'x 81, 83–84 (11th Cir. 2012); *Terrell v. Davis*, No. 5:17-CV-441-MTT-CHW, 2018 WL 5624723, at *2 (M.D. Ga. July 27, 2018), *report and recommendation adopted*, 2018 WL 4502329 (M.D. Ga. Sept. 20, 2018).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (*quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In considering exhaustion, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376.

To determine whether the plaintiff failed to exhaust, courts in the Eleventh Circuit follow the two-step process mandated by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). Under *Turner*'s first step, the court must look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Id.* at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it must make specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust the available administrative remedies. *Id.*

The facts underlying both the excessive force and conditions of confinement claims against Defendants Collins, Holt, Williams, and Pope pertain to two cross-cuffing incidents separate from the incident involving the other defendants in this action. The first related to a prolonged journey, during which time Plaintiff was cross-cuffed, where Pope and Williams "got off rout[e]" to be fitted for bullet-proof vests at another facility. (Docs. 20, p. 1; 69-5, ¶ 14). It is not clear from the record when that event took place. The second incident occurred on October 15, 2018, when Plaintiff was cross-cuffed while traveling alone for a hospital visit. (Doc. 20, pp. 1–2). Both claims were raised for the first time in Plaintiff's supplemental complaint, dated November 9, 2018. (*Id.*). Plaintiff filed his original complaint on July 18, 2018.[3] (Doc. 1).

Plaintiff's claims against Defendants Collins, Holt, Williams, and Pope are subject to dismissal at step one of *Turner*. Defendants allege that Plaintiff failed to file a grievance with

---

[3] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. Absent evidence to the contrary, [courts in the Eleventh Circuit] assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Daker v. Comm'r, Georgia Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016) (first alteration added) (internal quotation marks and citations omitted).

prison officials as to either incident. Plaintiff has not responded to the allegation, and there is no indication in the record that a relevant grievance was filed. Because Plaintiff did not even initiate the applicable grievance procedure before filing his claims in federal court, those claims must be dismissed. *See Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). That Plaintiff was granted leave to file the supplemental complaint in which those claims were raised, *see* (Doc. 29, pp. 2–3), does not alter that conclusion, *see Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ("Smith's attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect." (citing *Harris v. Garner*, 216 F.3d 970, 981 (11th Cir. 2000))).

## III.     SUMMARY JUDGMENT

Defendants McLaughlin, Eaddie, and Thomas are entitled to summary judgment as to all claims except the excessive force and conditions of confinement claims relating to Thomas's cross-cuffing of Plaintiff for the four-hour return journey from ASMP while Plaintiff was experiencing severe neck pain.

### A.  Summary Judgment Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party; however, "the mere existence of a scintilla of evidence

in support of the position will be insufficient." *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quoting *City of Delray Beach v. Agricultural Ins. Co.*, 85 F.3d 1527, 1530 (11th Cir. 1996)).

The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), which requires the Court to believe the evidence provided by the nonmovant and draw all justifiable inferences in the nonmovant's favor, *Anderson*, 477 U.S. at 255. "Inferences based on speculation," however, "will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (citation and internal quotation omitted).

A party's failure to respond to a motion for summary judgment does not inevitably result in summary judgment by default. *See Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039–40 (11th Cir. 2004). Instead, the court "must consider the merits of the motion" under the usual summary judgment standard articulated in Federal Rule of Civil Procedure 56. *Id.* at 1039 (quotations omitted).

The parties in this action have filed cross motions for summary judgment, with Plaintiff moving for partial summary judgment only.

"Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla.*

*Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." (citations omitted)).

*Perez-Santiago v. Volusia Cty.*, No. 6:08-CV-1868-ORL-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010).

B. Qualified Immunity[4]

There is a genuine issue of material fact left to be tried as to only two of Plaintiff's claims: the claims that Defendant Thomas (1) acted with excessive force and (2) imposed an unlawful condition of confinement in cross-cuffing Plaintiff for the entirety of the four-hour journey from ASMP to Macon State Prison while Plaintiff was suffering from a neck injury he had sustained from a fall earlier that day. Therefore, neither Defendant Thomas nor Defendants McLaughlin and Eaddie, as supervisors responsible for the implementation of the cross-cuffing policy, are entitled to qualified immunity from Plaintiff's excessive force and conditions of confinement claims.

1. Qualified Immunity Standard

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). The doctrine of qualified immunity

---

[4] "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

"balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

A threshold matter in deciding whether a defendant is entitled to qualified immunity is whether the defendant has established that "the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citation omitted). The parties do not dispute that Defendants' allegedly wrongful acts were performed within the scope of their respective discretionary authority. Having established that Defendants were engaged in discretionary functions during the incidents in question, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To show that Defendants are not entitled to qualified immunity, Plaintiff must present evidence demonstrating (1) "that the official's alleged conduct violated a constitutionally protected right," and (2) "that the right was clearly established at the time of the misconduct." *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). Both elements must be satisfied to overcome a defense of qualified immunity, *id.* (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010)), and the Court's analysis of these elements may be conducted in any order, *Pearson*, 555 U.S. at 236.

2. Excessive Force

Neither Defendants McLaughlin, Eaddie, nor Thomas are entitled to qualified immunity from Plaintiff's excessive force claim that Thomas cross-cuffed him for four hours while Plaintiff was suffering from a neck injury. As to Plaintiff's claim that the pre-injury cross-cuffing incident was excessive force, however, Defendants are entitled to qualified immunity.

a. Standard

The Eighth Amendment proscribes the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII. Force used against a prisoner is deemed within the bounds of that proscription "if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'" *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was used "maliciously and sadistically," courts consider factors such as:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response.

*Id.* (quotation marks omitted) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). In making that determination, courts must "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Id.* (quotation marks omitted) (quoting *Cockrell*, 510 F.3d at 1311).

In addition to the subjective inquiry, an objective showing of "a deprivation or injury that is 'sufficiently serious'" is required. *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective inquiry should generally focus "on the nature of the force applied, not on the extent of the injury inflicted," *Sears*, 922 F.3d at 1205, but the latter may provide "some indication" of the former, *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In an excessive force case, to overcome the defense of qualified immunity, a plaintiff need only show that the defendant violated a constitutional right, without regard to whether that right was clearly established. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). This rule was created "because, for an excessive-force violation of the Eighth . . . Amendment[],

'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.'" *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002)).

b. Transport Officer Thomas

As an initial matter, Plaintiff concedes that cross-cuffing in general did not cause him pain. Notably, Plaintiff testified during his deposition that he suffered no pain on the journey from the prison to ASMP, at which time he was able-bodied and suffering only from sinusitis, as a result of cross-cuffing.[5] (Doc. 69-3, p. 41). It was only after he sustained the injury to his neck after falling from the prison transport van at ASMP while cross-cuffed that cross-cuffing began to cause him pain. (*Id.*, pp. 41–42). Although the restrictive and uncomfortable nature of cross-cuffing as described by Plaintiff is troubling, such a *de minimis* use of force, at least when used against an able-bodied inmate, is far from the "sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *see id.* ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). Therefore, an excessive force claim based on cross-cuffing as a general practice cannot be sustained based on the record at this stage in proceedings, and Defendants McLaughlin, Eaddie, and Thomas are entitled to qualified immunity and summary judgment on that issue.

---

[5] Plaintiff originally claimed that he was "in anguish" during the trip to ASMP (Doc. 10, p. 6), but he contradicted that assertion in his deposition. Plaintiff bears the burden of presenting evidence sufficient to show a constitutional violation to overcome Defendants' qualified immunity defense, and his conclusory allegation of "anguish," alone and viewed in the light most favorable to him, is insufficient. *See Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (articulating the qualified immunity burden-shifting scheme); *Anderson v. Bd. of Regents of Univ. Sys. of Georgia*, 822 F. Supp. 2d 1342, 1347 (N.D. Ga. 2011).

As to the post-injury cross-cuffing incident, Plaintiff alleges that Thomas cross-cuffed him for the four-hour[6] return journey to Macon State Prison, resulting in "torment[ing]" neck pain from the restrictive nature of the cross-cuffs. (Doc. 10, p. 6). The pain, Plaintiff claims, was "murdering [his] mind to death," and he later experienced "one of the greatest moments of relief [he] ha[s] ever felt" once he was eventually released from the restraints. (Doc. 13-1, p. 4). After an unnamed inmate, who was also being transported in the van, asked Thomas why Plaintiff was still being cross-cuffed in light of the pain he was experiencing, Thomas responded, "We have to, per D.W. Eaddie." (Docs. 10, p. 6; 69-3, p. 42). The evidence, viewed in the light most favorable to Plaintiff, indicates that he was cross-cuffed by Thomas and remained restrained in that manner throughout the return journey.[7] (Thomas Aff., Doc. 69-4, ¶ 20). Plaintiff also alleged, and Defendants do not contest, that there was a sign or memorandum posted at the front entrance of the identification area of Macon State Prison that stated, "All inmates will be cross cuffed. No exceptions. Per Mr. Eaddie." (Eaddie Interrog., Doc. 59-1, p. 4; Thomas Interrog., Doc. 59-1, p. 6). Eaddie confirmed that he generally instructs other officers to cross-cuff all inmates "to ensure the practice is carried out without fail." (Doc. 59-1, p. 4).

The above allegations, accepted as true[8] and viewed in the light most favorable to Plaintiff, the non-moving party, sufficiently demonstrate at this stage that Thomas's actions in continuing to cross-cuff Plaintiff despite the severe pain he was suffering violated the Eighth Amendment. Although, as previously stated, the act of cross-cuffing itself was not objectively

---

[6] Defendants do not contest that it takes "several," or at least three-and-a-half hours, to travel between Macon State Prison and ASMP. (Eaddie Interrog., Doc. 59-1, pp. 4–5).

[7] Thomas had earlier indicated Plaintiff was not cross-cuffed during the trip from ASMP. (Doc. 59-1, p. 16). In response to an interrogatory on the issue, Thomas stated, "As I recall, all inmates rode back without being cross-cuffed." (*Id.*). Thomas's affidavit contradicts that statement. (Doc. 69-4, ¶ 20).

[8] Plaintiff's allegations were either made in a verified document or later confirmed under oath during his deposition. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (verified and sworn statements must be treated as testimony).

sufficiently serious to overcome qualified immunity, that conclusion was reached in the context of cross-cuffing Plaintiff before he sustained the neck injury. The evidence shows that once Plaintiff had suffered the injury to his neck, cross-cuffing caused him severe pain.[9] It is not significant that Plaintiff does not allege that the restraints worsened his injury, since "it is the [force used] that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Indeed, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* To subject Plaintiff to significant pain for four hours amounts to more than a mere "push or shove." *Id.* Therefore, Plaintiff has shown that there is an issue of fact to be tried as to whether the force used by Thomas was objectively sufficiently serious.

There is also a genuine issue of material fact as to whether Thomas applied force maliciously and sadistically for the purpose of causing harm. It is undisputed that the practice of cross-cuffing inmates during transport at Macon State Prison was implemented in response to an incident in which an inmate slipped from his restraints and attacked another inmate.[10] (Doc. 69-2, ¶ 44). Prison officials began cross-cuffing inmates to deter similar incidents of inmate-on-inmate violence. (*Id.*). Although Defendants concede Defendant Eaddie had posted a sign informing both inmates and prison officials that no exceptions to cross-cuffing will be allowed, Defendants have claimed that exceptions do exist. There is little consistency among Defendants'

---

[9] Defendant suggests that the neck injury was not caused by the fall, but was a long-term degenerative issue. (Doc. 69-1, p. 15). Plaintiff, on the other hand, maintains that the neck injury was caused by the fall. (Doc. 10, p. 6). The cause of the injury, as well as the extent to which Plaintiff was injured, will be an issue for the jury to resolve. For purposes of summary judgment, however, it is accepted as true that Plaintiff suffered neck pain after his fall from the van, and that cross-cuffing intensified that pain to "torment[ing]" proportions. (Doc. 10, p. 6).

[10] Defendant Eaddie suggests, however, that the practice was implemented "after two Georgia Department of Corrections transport officers were killed in connection with transporting inmates who were not cross-cuffed." (Doc. 69-7, ¶ 7). Either way, the important point is that cross-cuffing was introduced in response to inmate violence during travel.

testimony, however, as to what those exceptions involve. Defendant Pope, the prison's transfer sergeant, claims that two exceptions to cross-cuffing exist: when the inmate's medical profile indicates a medical condition that would "overri[de]" the practice and when the inmate is "overweight or very large." (Doc. 69-5, ¶ 7). Defendant Perry, the warden at Macon State Prison since August 2018, does not mention a medical exception for cross-cuffing, but merely elaborates on the "large inmate" exception. (Doc. 69-8, ¶ 5). According to Perry, to restrain a physically large inmate, officials use "extra handcuffs . . . to attach the inmate's handcuffs and waist chain instead of crossing the inmate's arms and attaching their handcuffs to the opposite side of their waist chain in front of the inmate's waist." (*Id.*). Perry's testimony does not explain how inmates with an overriding medical condition are to be restrained during travel.

Assuming that such exceptions do exist, the existence of those exceptions to cross-cuffing shows that alternative methods of restraint were available to certain inmates.[11] The question now becomes whether Plaintiff qualified for either of the exceptions. It is uncontested that Plaintiff is not so large or overweight as to qualify for an exception on that basis. (Doc. 69-2, ¶ 28). However, Plaintiff's neck injury may have met the "medical profile" exception at the time he was cross-cuffed by Thomas. Liberally construed, Plaintiff argues that his neck injury met such an exception. *See* (Doc. 59, p. 4 ("Thomas . . . would have 'improved conditions' (by lightening my discomfort); simply by lessening my restraints.")). Since there is no evidence indicating what type of "medical profile" would qualify an inmate for the exception, there is a genuine issue of material fact as to whether Plaintiff qualified for the exception. The issue of fact is "material" because if Plaintiff did, in fact, qualify for the exception, and if Thomas knew this, the proffered need for the application of force in Plaintiff's case is eliminated, and a reasonable

---

[11] Plaintiff also suggests that Defendants could have used the "perfected statewide cuffing method," which does not involve cross-cuffing but still restricts movement to a lesser degree. (Doc. 10-1, p. 19). Defendants have not explicitly addressed the feasibility of Plaintiff's proposed alternative method.

jury could conclude that Thomas left Plaintiff cross-cuffed maliciously and sadistically to cause harm. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."). Even if the policy was indeed without exception, a genuine issue of material fact would still remain as to whether Thomas left Plaintiff cross-cuffed and in pain maliciously and sadistically with the intent to cause harm pursuant to the exceptionless policy.

This is not a situation where prison officials were required to act "quickly and decisively" to maintain order, such as in a riot situation. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992). There is no indication, and Defendants do not argue, that Plaintiff posed any threat to anyone at that time. Nor is there any evidence in the record to suggest that Plaintiff has a history of violence or disruptive behavior that might suggest the reasonableness of additional force. *See Burke v. Bowns*, 653 F. App'x 683, 698 (11th Cir. 2016) (finding that the amount of force used against an inmate who sneezed on a correctional officer, who mistakenly believed the inmate had spit on him, was "appropriately calibrated to the threat posed by [the inmate]," where the inmate "had a history of spitting on officers").

In sum, the balance that all corrections officers must make when deciding to use force—that of the "need 'to maintain or restore discipline' through force" against the risk of injury to inmates, *Hudson*, 503 U.S. at 6—in this case weighs in favor of a less restrictive restraint than the cross-cuffing method used by Defendant Thomas. That conclusion, in turn, creates a genuine issue of material fact as to whether Thomas used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* Accordingly, Defendant

Thomas's motion for summary judgment as to the excessive force claim against him should be denied.

For similar reasons, Plaintiff's motion for summary judgment should also be denied. Although Plaintiff has presented sufficient evidence to defeat Defendant Thomas's qualified immunity defense, the evidence is such that a reasonable jury could return a verdict for Thomas, the nonmoving party in the context of Plaintiff's motion. *See Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001). For example, the parties have presented conflicting evidence as to whether the post-injury cross-cuffing caused him pain. Thomas, in his affidavit, testified that when he cross-cuffed and transported Plaintiff on November 6, 2017, he was "not aware of any risk of harm due to him . . . as a result of being cross-cuffed." (Doc. 69-4, ¶ 13). That statement plainly contradicts Plaintiff's assertion that Thomas was told by other inmates on the van that Plaintiff was in pain, to which Thomas allegedly responded that cross-cuffing was mandatory. (Doc. 69-3, p. 42). "That presents [the Court] with 'a classic swearing match, which is the stuff of which jury trials are made.'" *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). Accordingly, Plaintiff's motion should be denied.

c. Former Warden McLaughlin and Deputy Warden of Security Eaddie

Plaintiff also implicates Defendants Eaddie and McLaughlin in Thomas's use of excessive force. Generally, Plaintiff alleges that McLaughlin initially implemented the practice of cross-cuffing inmates during travel and that Eaddie carried out the policy by ensuring that officers cross-cuffed all inmates. (Doc. 10, p. 7). Neither McLaughlin nor Eaddie are entitled to qualified immunity from Plaintiff's excessive force claim, because a reasonable jury could find that they are liable in their supervisory capacity for Thomas's actions.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks omitted) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Instead, liability attaches "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* It is undisputed in this case that neither McLaughlin nor Eaddie personally participated in Thomas's alleged unconstitutional acts. Although Plaintiff claims that Eaddie was present at the time Plaintiff boarded the van at Macon State Prison, allegedly to ensure Plaintiff and other inmates were travelling cross-cuffed (Doc. 10, p. 5), as discussed above, Plaintiff has not sufficiently alleged that he was in any pain at that time. It was only later, after Plaintiff had sustained the neck injury, that the restraints caused Plaintiff pain. Plaintiff does not allege that Eaddie was present at that time or that Eaddie either knew about his neck injury or directed Thomas to cross-cuff Plaintiff despite the injury. Therefore, McLaughlin and Eaddie are only liable if Plaintiff can sufficiently prove a causal connection between their actions and Thomas's unlawful acts.

The requisite causal connection can be established in one of three ways:

> 1) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, 2) when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights," or 3) "when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Pozdol v. City of Miami*, 996 F. Supp. 2d 1290, 1299 (S.D. Fla. 2014) (quoting *Cottone*, 326 F.3d at 1360–61). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th

Cir. 2003) (quotation marks omitted) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

There is no evidence that McLaughlin or Eaddie were sufficiently on notice of widespread abuse related to cross-cuffing[12] or facts to support the inference that either McLaughlin or Eaddie directed Thomas to act unlawfully or knew Thomas would act unlawfully yet failed to stop him from doing so. There is, however, a genuine issue of material fact as to whether Eaddie had a policy in place that required Thomas to cross-cuff Plaintiff despite circumstances that caused him severe pain. Therefore, Eaddie is not entitled to qualified immunity and summary judgment should be denied.

Nor is Defendant McLaughlin entitled to qualified immunity. McLaughlin apparently conceded that he "approved Mr. Eaddie's enforcement of cross-cuffing inmates." (Doc. 59-1, p. 1). In the same interrogatory response, however, McLaughlin claimed that he "do[es] not believe [he] 'signed off on' a policy" of cross-cuffing. (*Id.*, p. 2). McLaughlin's inconsistent statements, viewed in the light most favorable to Plaintiff, reveal a genuine issue of material fact as to whether he approved Eaddie's cross-cuffing policy. If such approval was given, then a causal connection is established between his approval of the policy and Thomas's actions. Because a reasonable jury could make such a finding, summary judgment in McLaughlin's favor is not warranted.

---

[12] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). At most, Plaintiff's allegations reveal only vague incidences where other inmates suffering from injuries or illness have been cross-cuffed. For example, Plaintiff makes the broad claim that all inmates, including those who are "crippled, [or] chronically ill," are cross-cuffed without exception. (Docs. 59-1, p. 5; 69-3, p. 72). Plaintiff's vague claim does not suggest that McLaughlin and Eaddie would have been on notice of widespread abuse to even a minimal extent.

Though the record at this stage is sufficient to defeat qualified immunity as to Defendants McLaughlin and Eaddie, summary judgment in Plaintiff's favor should be denied. As stated above, there are genuine issues of material fact left to be resolved as to the nature of Macon State Prison's cross-cuffing policy, whether Thomas acted with malice in carrying out that policy, and whether McLaughlin approved the policy. The resolution of these issues is a matter for the jury.

3. <u>Deliberate Indifference to Serious Medical Needs</u>

In this Court's screening order, a deliberate indifference to medical needs claim was construed against Defendant Thomas regarding his use of cross-cuffs on Plaintiff following his neck injury. (Doc. 15, pp. 12–13). Such claims usually involve allegations of the denial or delay of medical treatment, or the intentional interference with medical treatment once prescribed. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Because the record at summary judgment has not revealed any facts that might speak to the inadequacy of the medical treatment Plaintiff received, the more appropriate standard for assessing the Eighth Amendment claim against Thomas is excessive force, as reviewed above. Accordingly, Defendant Thomas is entitled to qualified immunity from Plaintiff's deliberate-indifference claim.

4. <u>Conditions of Confinement</u>

Plaintiff's conditions of confinement claims against Defendants McLaughlin, Eaddie, and Thomas relate to all three of the scenarios he experienced on November 6, 2017: (1) the condition of being cross-cuffed on the way to ASMP; (2) the condition of being cross-cuffed while alighting from a prison transport van; and (3) the condition of being cross-cuffed while suffering from an injury. Defendants are entitled to qualified immunity as to the claims related to the former two incidents only.

a. Standard

To establish a violation of the Eighth Amendment based on the conditions of confinement, the inmate must satisfy both an objective and subjective component. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the objective component, the inmate must show that he suffered a "deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Only extreme conditions will satisfy this inquiry, and the inmate must show, at the very least, that the challenged conditions "'pose[d] an unreasonable risk of serious damage to his future health' or safety." *Chandler*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)); *see also Farmer*, 511 U.S. at 847 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face *a substantial risk of serious harm* and disregards that risk by failing to take reasonable measures to abate it." (emphasis added)).

To establish the subjective component, the inmate must show that the prison official acted with deliberate indifference. *See Thomas*, 614 F.3d at 1304. "This means the prisoner must show that prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence." *Oliver v. Fuhrman*, 739 F. App'x 968, 970 (11th Cir. 2018) (citing *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

b. Post-injury Cross-cuffing

The above standard is easily met as to the conditions involving Plaintiff's post-injury restraints, as it has already been established under the "heightened" intent requirement in the

excessive-force context that Thomas applied the cross-cuffs with the very purpose of causing harm, *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999), and that the resulting pain Plaintiff experienced was "sufficiently serious." It has further been established that McLaughlin's and Eaddie's actions rendered them liable as supervisory personnel at Macon State Prison. Defendants' actions are sufficiently egregious as to remove the need for prior case law to clearly establish his right to be free from such conditions. *See Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (quoting *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013)). Therefore, neither Defendants McLaughlin, Eaddie, or Thomas are entitled to qualified immunity from Plaintiff's conditions of confinement claim regarding the post-injury incident.

Furthermore, as discussed in the excessive-force context, there are genuine issues of material fact left to be resolved as to Defendant Thomas's intent, the prison policy regarding cross-cuffing, and the extent of supervisory approval of the policy. Therefore, Plaintiff's motion for summary judgment as to the conditions of confinement claim should be denied.

### c.   Pre-injury Cross-cuffing

As for the practice of cross-cuffing in general and during his transport to ASMP, at which time Plaintiff was not injured, Plaintiff has not shown that the practice was sufficiently serious to meet Eighth Amendment standards. Plaintiff's admission that the practice caused him no pain suggests that the condition was not serious and did not pose a risk to his health and safety. *See Chandler*, 379 F.3d at 1289. Accordingly, Defendants McLaughlin, Eaddie, and Thomas are entitled to qualified immunity from Plaintiff's claim that cross-cuffing as a general practice is an unlawful condition of confinement.

d.   Cross-cuffing Inmates Alighting from Prison Transport Van

The closer question, however, is whether Plaintiff has shown that requiring inmates be cross-cuffed while exiting a prison transport van posed a substantial risk of serious harm.[13] Viewed in the light most favorable to Plaintiff, to exit the van, inmates had to negotiate at least two steps and an iron stool before reaching the ground. (Doc. 69-3, p. 53). Plaintiff alleges that he was unable to balance while attempting to walk down the steps because his movement was restricted by the cross-cuffs, resulting in his fall and neck injury. He also alleges that Defendants were on notice of the risk of inmates falling from the van, citing comments made by officers at the scene that indicated similar incidents had happened before. (Doc. 10, p. 6). However, even if Plaintiff could meet his burden of showing that cross-cuffing under those circumstances was a constitutionally inadequate condition of confinement, he has not shown that that right to avoid that condition was clearly established at the time of the alleged misconduct.

A plaintiff can clearly establish law in one of three ways: (1) he "can point to a [binding] case with 'materially similar' facts decided by the Supreme Court, the Court of Appeals, or the highest court of the relevant state," *Sebastian v. Ortiz*, 918 F.3d 1301, 1310 (11th Cir. 2019) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002)); (2) he can "show that a broader, clearly established principle should control the novel facts in this situation," *id.* (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)); and (3) where the alleged conduct is "so egregious . . . no prior case law is needed to put a reasonable officer on notice of its unconstitutionality," *Brooks*, 800 F.3d at 1307. The latter two methods are "generally known as 'obvious clarity' cases," which are considered narrow exceptions to the former and rarely arise. *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017). Where, as here, "the

---

[13] The scope of this claim is narrow because, although there may be other similarly precarious activities inmates are forced to perform while cross-cuffed, Plaintiff had made no such allegations.

applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (quoting *Thomas v. Roberts*, 323 F.3d 950, 954 (11th Cir. 2003)).

Liberally construed, the only precedent to which Plaintiff has pointed is *Thomas v. Bryant*,[14] a published decision that Plaintiff cites for the proposition that the "evidence must demonstrate that 'with knowledge of the infirm conditions, [the official] knowingly or recklessly declined to take actions that would have improved the conditions.'" 614 F.3d 1288, 1312 (11th Cir. 2010) (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1537 (11th Cir. 1993)). In *Thomas*, the plaintiff brought a § 1983 action against various officials of the Florida Department of Corrections, alleging that spraying chemical agents such as pepper spray on inmates with mental illness and other vulnerabilities violated the Eighth Amendment. *Id.* at 1293–94, 1296. The Eleventh Circuit affirmed the district court's grant of declaratory relief in favor of the plaintiff, holding that the repeated spraying of chemicals was an "extreme deprivation" and that officials had demonstrated the requisite recklessness to establish deliberate indifference. *Id.* at 1304–17.

Plaintiff attempted to analogize *Thomas v. Bryant* to Defendants' actions, arguing that allowing him to exit the van while cross-cuffed was in knowing and reckless disregard for his health and safety. (Doc. 59, p. 4). However, the unlawfulness of cross-cuffing under those circumstances is not readily apparent from *Thomas v. Bryant*. It simply would not be clear to a reasonable official that, based on *Thomas*, requiring an inmate to step down and out of a van while restrained to the extent Plaintiff was restrained would be unlawful. *See Melton*, 841 F.3d at

---

[14] Although Plaintiff cited *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004), the quote on which Plaintiff relies is found in *Thomas*, not *Chandler*. (Doc. 59, p. 4).

1221 ("In order for the law to be clearly established, 'case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law.'" (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000))). Nor does *Thomas* clearly establish a broader principle of law applicable to the instant case.

It is not sufficiently clear from other binding precedent that Defendants' actions violated established law. *Cf. Roberson v. Wilson*, No. 5:12-CV-486-MTT, 2014 WL 1247892, at *6 (M.D. Ga. Mar. 25, 2014) (finding no case law clearly establishing that prolonged handcuffing violated the Eighth Amendment). For example, in *Hope v. Pelzer*, the Supreme Court held that the defendants' actions in handcuffing the plaintiff in a restricted position for seven hours to a hitching post, while he was exposed to the Sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks, creating "a risk of particular discomfort and humiliation," amounted to a "gratuitous infliction of 'wanton and unnecessary pain'" in clear violation of the Eighth Amendment. 536 U.S. 730, 738 (2002). The particularly egregious circumstances in *Hope*—described by the Supreme Court as "obvious[ly] cruel[]" and "antithetical to human dignity," *id.* at 745—are materially distinguishable from the facts of the instant case, in which Plaintiff sustained an injury after falling out of a van, after which he received immediate medical attention. Therefore, *Hope* cannot put a reasonable official on notice that cross-cuffing would be an illegal condition of confinement.

Finally, the condition of requiring Plaintiff to be cross-cuffed while alighting the prison transport van is not so egregious as to relieve Plaintiff of the burden of presenting binding case law to establish a violation of his rights. Plaintiff's circumstances are a far cry from the facts of, for example, *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015), where a prisoner was forced to

soil himself over a two-day period while restrained in a hospital bed, enduring ridicule from prison officers in the process, or, indeed, *Hope v. Pelzer*, as described above.

In sum, even if the risk posed by the mandatory cross-cuffing of inmates when stepping down from a prison transport van is so grave as to violate constitutional standards, Plaintiff has not met his burden of showing that the right violated was clearly established. Accordingly, Defendants McLaughlin, Eaddie, and Thomas are entitled to qualified immunity from Plaintiff's conditions of confinement claim as to the incident involving Plaintiff's fall from the van.

## IV.    PRISON LITIGATION REFORM ACT

Defendants McLaughlin, Eaddie, and Thomas also move for summary judgment on the basis of the Prison Litigation Reform Act's physical-injury requirement, *see* 42 U.S.C. § 1997e(e), which bars the recovery of compensatory and punitive damages where the plaintiff fails to allege a greater than *de minimis* physical injury, *see Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015). Plaintiff alleges that he suffered severe pain for around four hours while cross-cuffed in a prison transport van. Contrary to Defendants' assertion, *see* (Doc. 69-1, pp. 25–26), Plaintiff's neck injury has required significant medical attention, including pain medication, an MRI scan, and physical therapy (Docs. 21-1, p. 1; 69-3, pp. 19–21, 59–60), and he suffers ongoing pain to the extent that his sleep is regularly affected (Docs. 13-1, pp. 2–5; 21, p. 2; 69-3, p. 70). The MRI revealed "[s]ignificant degenerative disc disease with disc-osteophyte complex and uncovertebral joint hypertrophy," among other issues. (Doc. 69-3, p. 131). Plaintiff claims that he has been told that his degenerative condition has "no remedy." (Doc. 59, p. 6).

Based on the above allegations, which are viewed in the light most favorable to Plaintiff, it cannot be said that Plaintiff has not alleged a physical injury that fails to meet the PLRA's physical-injury requirement. Defendants have cited no binding authority that suggests otherwise.

It also cannot be said, based on the record as it stands, that Defendant Thomas's actions in cross-cuffing Plaintiff for four hours while he suffered severe neck pain did not have a causal effect on Plaintiff's injury. Accordingly, compensatory and punitive damages are recoverable against Defendants McLaughlin, Eaddie, and Thomas. In any event, the allegedly severe pain Plaintiff suffered for four hours during the four-hour trip constitutes at least a *de minimis* injury under the PLRA, for which nominal damages would remain available. *See Brooks*, 800 F.3d at 1307–08.

## V.     ELEVENTH AMENDMENT IMMUNITY

To the extent that Plaintiff has brought suit against Defendants in their official capacities, Defendants, as state employees, are entitled to immunity under the Eleventh Amendment.

In suing Defendants in their official capacities, Plaintiff is effectively suing the sovereign, here, the State of Georgia. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citations omitted)). *But see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("[O]fficial-capacity actions for *prospective* relief are *not* treated as actions against the State." (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908))). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169. As the State of Georgia has not waived immunity, and § 1983 was not meant to abrogate a State's immunity, *see id.* at 169 n.17 (citing *Quern v. Jordan*, 440 U.S. 332 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974)), Plaintiff is barred from suing Defendants in their official capacities for damages in this action.

## CONCLUSION

After careful consideration, it is **RECOMMENDED** that:

- Defendants Collins, Holt, Williams, and Pope's motion for summary judgment, construed as a motion to dismiss, be **GRANTED**, and that Plaintiff's claims against them be **DISMISSED without prejudice** for failure to exhaust.

- Defendants McLaughlin, Eaddie, and Thomas's motion for summary judgment as to Plaintiff's excessive force and conditions of confinement claims regarding the post-injury cross-cuffing incident be **DENIED**. At trial, both compensatory and punitive damages will remain available against Defendants in their individual capacities. It is further **RECOMMENDED** that summary judgment be **GRANTED** as to the other excessive force and conditions of confinement claims against Defendants McLaughlin, Eaddie, and Thomas in their individual capacities, because they are entitled to qualified immunity.

- Defendant Thomas's motion for summary judgment be **GRANTED** as to Plaintiff's deliberate indifference claim, because he is entitled to qualified immunity from the claim.

- Defendants McLaughlin, Eaddie, Thomas, and Perry's motion for summary judgment be **GRANTED** as to all claims brought against them in their official capacities, because they are entitled to Eleventh Amendment immunity.[15]

- Defendants' motion for summary judgment as to Plaintiff's claims for injunctive relief be **GRANTED**, as those claims are mooted by his transfer from Macon State Prison.

- Plaintiff's motion for summary judgment be **DENIED** as to all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14)</u>

---

[15] The only claims against Perry are those in his official capacity. (Doc. 29, pp. 4–5).

DAYS after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 19th day of December, 2019.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge